UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

Amy Schneider and Erika Opgenorth, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

Colgate-Palmolive Company and CP Skin Health Group, Inc.

Defendants.

---

Case No. 5:22-cv-01294-DNH-TWD

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

---

GREENBERG TRAURIG, LLP
One Vanderbilt Ave
New York, New York 10017
Telephone: 212.801.9200

*Attorneys for Defendants Colgate-Palmolive Company and CP Skin Health Group, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS...............................................................................................4

    A.    Colgate's EltaMD Sunscreen Products.................................................4

    B.    Plaintiffs' Allegations that Colgate's Accurate Labels and Advertising Constitute False and Deceptive Practices.....................................................5

LEGAL ARGUMENT

    I.    Legal Standard.........................................................................8

    II.    Plaintiffs' Statutory Claims (Counts 1-5) Fail Because the Labeling and Advertisement for the Products are Factually True and Colgate Did Not Engage in Deceptive Conduct ...................................................9

        A.    The Statutory Claims Fail Because the Statements were Factually True and Would Not Deceive the Reasonable Consumer .......................10

            i.    New York's GBL §§ 349, 350......................................10

            ii.    California's CLRA, FAL, and UCL .............................................11

            iii.    The Labeling and Advertisements for the Products are Factually True and No Reasonable Consumer Would Be Deceived.......................12

    III.    Plaintiffs Plead Only Conclusory Allegations Regarding Knowledge Under California Law ...............................................................14

    IV.    Plaintiffs' Breach of Express Warranty Claim (Count 6) Must Be Dismissed for Failure to Identify the Terms and Conditions of Any Express Warranty on Which They Relied .................................................15

    V.    Plaintiffs Cannot Assert Claims Based on Advertisements They Never Viewed .17

    VI.    Plaintiff Schneider Fails to Plausibly Allege a Breach of Implied Warranty Under Cal. Com. Code § 2314 (Count 7), and the Claim Also Fails for Lack of Privity...........................................................................18

    VII.    Plaintiffs' Claim for Quasi Contract/Unjust Enrichment/Restitution Cannot Survive under New York and California Law, and Plaintiffs Do Not Have Standing to Assert the Claim on a Nationwide Basis .........................19

    VIII.    Plaintiffs Fail to Adequately Plead a Price Premium Injury ...............................24

CONCLUSION..............................................................................................25

TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abuelhawa v. Santa Clara Univ.*,
  529 F. Supp. 3d 1059 (N.D. Cal. 2021)....................................................................20

*In re Arris Cable Modem Consumer Litig.*,
  2018 U.S. Dist. LEXIS 1817 (N.D. Cal. Jan. 4, 2018)...................................... 10, 20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................8

*Azoulai v. BMW of N. Am. LLC*,
  2017 U.S. Dist. LEXIS 57121 (N.D. Cal. Apr. 13, 2017).......................................16

*Barreto v. Westbrae Nat., Inc.*,
  518 F. Supp. 3d 795 (S.D.N.Y. 2021)....................................................................16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................8

*Bly-Magee v. California*,
  236 F. 3d 1014 (9th Cir. 2001) ...........................................................................9, 14

*BNP Paribas Mortg. Corp. v. Bank of America, N.A.*,
  949 F. Supp. 2d 486 (S.D.N.Y. 2013)....................................................................21

*Brodsky v. Apple Inc.*,
  445 F. Supp. 3d 110 (N.D. Cal. 2020)....................................................................20

*Bynum v. Family Dollar Stores, Inc.*,
  592 F. Supp. 3d 304 (S.D.N.Y. 2022)....................................................................16

*Chuang v. Dr. Pepper Snapple Grp., Inc.*,
  2017 WL 4286577 (C.D. Cal. Sept. 20, 2017) ......................................................21

*Claims v. Avanir Pharm., Inc.*,
  2022 U.S. Dist. LEXIS 213975 (C.D. Cal. Oct. 20, 2022).....................................21

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008) ...............................................................................19

*Cohen v. JP Morgan Chase & Co.*,
  498 F.3d 111 (2d. Cir. 2007) ...................................................................................9

*Corcoran v. CVS Health Corp.*,
   2016 U.S. Dist. LEXIS 99797 (N.D. Cal. July 29, 2016) ....................................................23

*Corsello v. Verizon N.Y. Inc.*,
   18 N.Y.3d 777 (N.Y. 2012) .................................................................................................20

*Cosgrove v. Or. Chai, Inc.*,
   520 F. Supp. 3d 562 (S.D.N.Y. 2021) .................................................................................12

*Dacorta v. AM Retail Grp., Inc.*,
   2018 U.S. Dist. LEXIS 10733 (S.D.N.Y. Jan. 23, 2018) ....................................................24

*Davito v. Amtrust Bank*,
   743 F.Supp.2d 114 (E.D.N.Y. 2010)....................................................................................23

*In re Direxion ETF Tr.*,
   279 F.R.D. 221 (S.D.N.Y. 2012) .........................................................................................22

*Dreifort v. DJO Glob. Inc.*,
   2019 U.S. Dist. LEXIS 187532 (S.D. Cal. Oct. 28, 2019) ..................................................15

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) ...........................................................................................20

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) ...........................................................................................9, 11

*Forjone v. New York (NYS) DMV*,
   414 F. Supp. 3d 292 (N.D.N.Y. 2019) ...................................................................................8

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ............................................................................................9, 12

*Gale v. IBM*,
   9 A.D.3d 446 (2d Dept. 2004) ............................................................................................17

*In re Gen. Motors LLC Ignition Switch Litig.*,
   257 F. Supp. 3d 372 (S.D.N.Y. 2017)..................................................................................21

*In re Grand Theft Auto Video Game Consumer Litig.*,
   251 F.R.D. 139 (S.D.N.Y. 2008) .........................................................................................23

*Gustavson v. Wrigley Sales Co.*,
   2014 WL 60197 (N.D. Cal. Jan. 7, 2014)............................................................................17

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017)...............................................................................18

*Hill v. Roll International Corp.*,
195 Cal. App. 4th 1295 (2011) ..................................................................................9

*Hilsley v. Ocean Spray Cranberries, Inc.*,
2018 U.S. Dist. LEXIS 202679 (S.D. Cal. Nov. 29, 2018)......................................19

*Horowitz v. Stryker Corp.*,
613 F. Supp. 2d 271 (E.D.N.Y. 2009)......................................................................11

*Horti v. Nestlé HealthCare Nutrition, Inc.*,
2022 U.S. Dist. LEXIS 117773 (N.D. Cal. July 5, 2022) ........................................24

*In re HSBC BANK USA, N.A.*,
1 F. Supp. 3d 34 (E.D.N.Y. 2014)............................................................................23

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
936 F.2d 759 (2d Cir. 1991) ......................................................................................1

*Izquierdo v. Mondelez Int'l, Inc.*,
2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016)..........................................................24

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......................................................................... 10, 14

*Koch v. Acker, Merrall & Condit Co.*,
18 N.Y.3d 940 (N.Y. 2012) ......................................................................................10

*Lavie v. Procter & Gamble Co.*,
105 Cal. App. 4th 496 (2003) ...............................................................................9, 10

*Lewis v. Casey*,
518 U.S. 343 (1996) ..................................................................................................22

*Los Gatos Mercantile, Inc. v. E.I. Dupont de Nemours & Co.*,
2014 U.S. Dist. LEXIS 133540 (N.D. Cal. Sep. 22, 2014) ....................................22

*Morales v. Kimberly-Clark Corp.*,
2020 U.S. Dist. LEXIS 93307 (S.D.N.Y. May 27, 2020) .......................................14

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
85 N.Y.2d 20 (1995)..................................................................................................11

*In re Packaged Seafood Prods. Antitrust Litig.*,
242 F. Supp. 3d 1033 (S.D. Cal. 2017) ...................................................................23

*Parks v. Dick's Sporting Goods, Inc.*,
2006 U.S. Dist. LEXIS 39763 (W.D.N.Y. June 15, 2006)......................................22

*Patterson v. RW Direct, Inc.*,
  2018 U.S. Dist. LEXIS 198887 (N.D. Cal. Nov. 21, 2018) ...................................................19

*Resnick v. Hyundai Motor Am., Inc.*,
  2017 WL 1531192 (C.D. Cal. Apr. 13, 2017) .......................................................................14

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000) .......................................................................................................1

*Schertzer v. Bank of Am., N.A.*,
  445 F. Supp. 3d 1058 (S.D. Cal. 2020) ..................................................................................22

*Shin v. Campbell Soup Co.*,
  2017 WL 3534991 (C.D. Cal. Aug. 9, 2017)..........................................................................21

*Snyder v. Tamko Bldg. Prods.*,
  2019 U.S. Dist. LEXIS 169378 (E.D. Cal. Sep. 30, 2019).....................................................15

*Stewart v. Kodiak Cakes, LLC*
  537 F. Supp. 3d 1103 (S.D. Cal. 2021) ..................................................................................23

*Tietsworth v. Sears*,
  720 F.Supp.2d 1123 (N.D. Cal. 2010).....................................................................................23

*Tietsworth v. Sears, Roebuck & Co.*,
  2009 U.S. Dist. LEXIS 40872 (N.D. Cal. May 14, 2009).......................................................15

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
  2007 WL 1138879 (S.D.N.Y. Apr. 16, 2007) ..........................................................................1

*Tompkins v. R.J. Reynolds Tobacco Co.*,
  92 F. Supp. 2d 70 (N.D.N.Y. 2000) ........................................................................................17

*Varela v. Walmart, Inc.*,
  2021 U.S. Dist. LEXIS 102661 (C.D. Cal. May 25, 2021) ............................................. 13, 24

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ................................................................................................14

*Wang v. Bethlehem Cent. Sch. Dist.*,
  2022 U.S. Dist. LEXIS 140153 (N.D.N.Y. Aug. 8, 2022)................................................. 8, 22

*In re Welspun Litig.*,
  2019 U.S. Dist. LEXIS 84635 (S.D.N.Y. May 20, 2019) .......................................................19

*Workman v. Plum Inc.*,
  141 F. Supp. 3d 1032 (N.D. Cal. 2015)..................................................................................13

*Wurtzburger v. Ky. Fried Chicken*,
  2017 U.S. Dist. LEXIS 205881 (S.D.N.Y. Dec. 13, 2017) ...................................................11

*Zottola v. Eisai Inc.*,
  564 F. Supp. 3d 302 (S.D.N.Y. 2021) ...............................................................................24

**Statutes**

Cal. Bus. & Prof. Code §§ 17200, 17500........................................................................ 9, 10, 11

Cal. Civ. Code § 1750 ...........................................................................................................10

Cal. Civ. Code § 1760 ...........................................................................................................11

Cal. Civ. Code § 1770(a).......................................................................................................11

Cal. Com. Code § 2314 ................................................................................................... 18, 19

California's Consumers Legal Remedies Act ..................................................................*passim*

California's False Advertising Law ...................................................................................*passim*

California's Unfair Competition Law .................................................................................*passim*

GBL §§ 349, 350..............................................................................................................*passim*

GBL § 349(a)........................................................................................................................10

GBL § 350 ................................................................................................................... 7, 10, 21

UCL....................................................................................................................................*passim*

**Other Authorities**

21 CFR §201.327(a)..................................................................................................................2

21 CFR § 352.10 .......................................................................................................................7

Fed. R. Civ. P. 23.....................................................................................................................23

Rule 9(b)...............................................................................................8, 9, 10, 14, 15, 20

Rule 12(b)(1) ............................................................................................................. 8, 22, 23

Rule 12(b)(6) .............................................................................................................................8

Rule 12(f)................................................................................................................................23

Defendants Colgate-Palmolive Company and CP Skin Health Group, Inc. (collectively, "Colgate" or "Defendants") submit this Memorandum of Law in support of their motion to dismiss the Class Action Complaint ("Complaint" or "Compl.") pursuant to Rules 12(b)(6), 12(b)(1), and 9(b) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Defendants are proud of distributing EltaMD, the "#1 Dermatologist Recommended Professional Sunscreen brand." Exhibit A to the Declaration of Keith E. Smith ("Smith Decl.").[1] Defendants' EltaMD sunscreens were traditionally considered "professional products" only available from your dermatologist. One particularly important feature is the presence of zinc oxide, a mineral sunscreen ingredient that, according to the Complaint, "sit[s] on the surface of the skin as an invisible 'physical' layer [] stopping most UV rays before they have a chance to penetrate the body." Compl. ¶30. We all recall images of lifeguards and sunbathers with white zinc oxide sunscreen on their noses. EltaMD formulates sunscreens with the zinc oxide "physical layer"

---

[1] Exhibit A to the Smith Declaration is a complete copy of the Amazon.com page reproduced in part by Plaintiffs at Paragraph 20 of the Complaint and relied on by Plaintiffs throughout the Complaint, as the page existed soon after the Complaint was filed. *See* Compl. ¶¶5, 9, 10, 20, 29, 34. The Court can consider the entire Amazon.com page that Plaintiffs selectively excerpted in their Complaint. *See Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (holding that a court may consider the facts alleged in the complaint, together with any statements or documents incorporated in it by reference, as well as documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit); *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991) (holding that a plaintiff cannot "evade a properly argued motion to dismiss simply because [the] plaintiff has chosen not to attach [a document on which he or she relies in bringing suit] to the complaint or to incorporate it by reference."). And, the Court *should* consider the entire Amazon.com page, because context is critical in cases alleging false or misleading advertising. *See Time Warner Cable, Inc. v. DIRECTV, Inc.*, 2007 WL 1138879, at *4 (S.D.N.Y. Apr. 16, 2007) ("In considering false advertising claims, the Court is to bear in mind that 'fundamental to any task of interpretation is the principle that text must yield to context,' and that the Court must 'consider the advertisement[s] in [their] entirety and not engage in disputatious dissection. The entire mosaic should be viewed rather than each tile separately.'" (quoting *S.C. Johnson & Son. Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001)).

*and* with a transparent finish as it is rubbed onto your skin. To help protect users from any rays that might get past the "physical layer," some EltaMD products also contain chemical sunscreen ingredients that prevent damage from the sun by inactivating UV rays through a chemical reaction. Together these mineral and chemical ingredients combine to provide the SPF factor, which is included on the label in accordance with FDA requirements. *See* 21 CFR §201.327(a).

Plaintiffs Amy Schneider and Erika Opgenorth ("Plaintiffs") never allege that either the product labels or marketing of EltaMD's sunscreen products is untrue. Instead, they take issue with the front label listing the most important characteristic of the products—the presence of zinc oxide—but not listing some of the other ingredients. Importantly, EltaMD never marketed the products as "all natural" or "chemical-free." In fact, the label prominently lists other non-mineral ingredients (e.g., "Hyaluronic Acid") on the front label above the listing of zinc oxide and in the same text size as it lists the other key attributes of the products.

In this case, Plaintiffs are suing Colgate because the front label on the EltaMD sunscreen products accurately lists zinc oxide (an ingredient the products contain), and because the Amazon.com listing from which Plaintiffs purchased accurately states "mineral-based" in the title (zinc oxide is a *mineral* from which the sunscreen is made). In short, the Plaintiffs are suing Colgate for factually true statements.

Plaintiffs claim that they purchased EltaMD UV Daily Broad-Spectrum SPF 40 Facial Sunscreen because they believed—based on the phrase "Transparent Zinc Oxide" on the label and "Mineral-Based" on an Amazon.com listing—that the products contained *only* zinc oxide and no other active sunscreen ingredient. They do not dispute that the ingredient list is accurate and complete and lists all additional active sunscreen ingredients. Nevertheless, Plaintiffs assert eight different causes of action for allegedly false and misleading advertising based on Colgate's use of

2

those two phrases in marketing the products. Plaintiffs do not claim they were harmed by the products; only that they paid more than they would have had they known the true ingredients of the products—a fact that was knowable if they simply looked. Plaintiffs bring their claims individually and on behalf of several putative classes of consumers, including a New York class, a California class, and (for one claim) a nationwide class.

Plaintiffs' claims are facially deficient for six reasons:

*First*, Plaintiffs' five causes of action based on consumer protection laws in New York and California all fail because Plaintiffs have not plausibly alleged that any reasonable consumer would be misled by the factually true phrases "Transparent Zinc Oxide" or "Mineral-Based." Plaintiffs have also failed to allege with the requisite factual specificity, as required under California law, that Colgate had knowledge that its marketing was misleading—which it was not.

*Second*, Plaintiffs cannot state a claim for breach of express warranty because their Complaint fails to identify the terms and conditions of any express warranty on which they relied and which Colgate purportedly breached.

*Third*, the Complaint relies on certain advertisements that Plaintiffs do not allege they ever viewed. Because Plaintiffs never relied on them, and they therefore could not have caused any injury to Plaintiffs, any claims premised on those advertisements should be dismissed.

*Fourth*, Plaintiffs' claim for breach of implied warranty under only California law fails because the products do contain zinc oxide, just as the allegedly offending label states. In addition, Plaintiffs cannot maintain their implied warranty claim due to lack of privity.

*Fifth*, Plaintiffs bring their catch-all claim for Quasi Contract/Unjust Enrichment/Restitution on behalf of a putative nationwide class, but they have no standing to represent consumers from states other than their own: New York and California. In the alternative,

3

they seek to represent New York and California sub-classes, but, in any event, their claims are unsustainable under California and New York law.

*Sixth*, Plaintiffs fail to adequately allege an essential element of their claims: injury. Plaintiffs assert a price premium theory of injury, yet they fail to plausibly allege that they actually paid a higher price for the products and that the products' higher price is traceable to the alleged misrepresentations.

Accordingly, as explained more fully below, Plaintiffs have failed to adequately plead any of their eight causes of action, and the Complaint should be dismissed in its entirety.

## STATEMENT OF FACTS

### A. Colgate's EltaMD Sunscreen Products

Colgate owns and markets EltaMD, which is the "#1 Dermatologist Recommended . . . Professional Sunscreen Brand." Many consumers are introduced to EltaMD through their dermatologist, and many dermatologists make EltaMD products available to their patients for purchase directly from their offices. Consumers do not have to return to their dermatologist's office for every purchase; they can conveniently stock up on EltaMD through other retailers such as Amazon.com. In fact, EltaMD consumers are overwhelmingly satisfied with the brand: in the Amazon.com listing relied upon and excerpted by Plaintiffs in the Complaint, a 1.7-ounce bottle of sunscreen that costs over $30 has 4.7 out of 5 stars from 14,073 different customer reviews. *See* Compl. ¶20.

This case involves nine EltaMD UV Broad-Spectrum sunscreen products (the "Products"). *Id.* at ¶15. The Products include various SPFs (SPF "30+" through "50+") and various functions or benefits ("Daily," "Clear," "Sport," "Sheer," "Lotion," "Facial," and "Lip Balm"). *Id.* Each Product contains zinc oxide, which is a mineral compound that works as a sunscreen agent by

4

reflecting and scattering UVA and UVB rays. The Products also contain other active sunscreen ingredients, such as octinoxate or octocrylene.

Plaintiffs do not dispute that all of the ingredients in each Product are disclosed on the ingredient panel, and, as shown in the screenshot below, Amazon.com provides a clear summary of the active sunscreen ingredients in the Products:

| | UV DAILY | UV DAILY TINTED | UV CLEAR | UV CLEAR TINTED |
|---|---|---|---|---|
| **Active Ingredients** | Zinc oxide, Octinoxate | Zinc oxide, Octinoxate | Zinc oxide, Octinoxate | Zinc oxide, Octinoxate |
| **Skin Type** | Normal, Dry, Combination | Normal, Dry, Combination | Sensitive, Acne-Prone, Rosacea | Sensitive, Acne-Prone, Rosacea |
| **Benefits** | Moisturizes, reduces wrinkles | Moisturizes, reduces wrinkles | Calms, protects sensitive skin | Calms, protects sensitive skin |
| **Broad-Spectrum** | SPF 40 | SPF 40 | SPF 46 | SPF 46 |
| **Water-Resistant** | ✗ | ✗ | ✗ | ✗ |
| **Tinted** | ✗ | ✓ | ✗ | ✓ |
| **Use On** | Face | Face | Face | Face |

*See* Smith Decl., Ex. A at p. 5. The front label for each Product lists "Transparent Zinc Oxide" on one line, without any other modifiers or adjectives (such as "Only" or "100%"). *See* Compl. ¶¶17, 20, 27 (pictures of labels). Consumers are informed that zinc oxide is not the only ingredient in the Products: the front labels call out additional ingredients *above* zinc oxide, such as "high-purity niacinamide" or "hyaluronic acid." *Id.* Similarly, the Products' titles on Amazon.com list numerous features or ingredients. *See, e.g.*, *id.* at ¶20 ("EltaMD Daily Face Sunscreen Moisturizer with Hyaluronic Acid, Broad Spectrum SPF 40, Non greasy, Sheer Zinc Oxide Lotion, Mineral-Based UVA, UVB Sun Protection, 1.7 oz").

## B. Plaintiffs' Allegations that Colgate's Accurate Labels and Advertising Constitute False and Deceptive Practices

Plaintiffs allege that Colgate has engaged in "false and deceptive practices in the marketing, distribution and sale" of the Products. Compl. ¶1. They claim that Colgate has misled

consumers into believing that zinc oxide is the only active sunscreen ingredient in the Products. *See, e.g., id.* at ¶2. Plaintiffs rely primarily on three allegations pertaining to EltaMD marketing: (1) that zinc oxide is listed on the front label (*see, e.g., id.* at ¶¶3, 5, 9, 10, 17); (2) that the Amazon.com pages for some of the Products stated "Mineral-Based" in the title (*see, e.g., id.* at ¶¶3, 5, 9, 10, 20); and (3) that certain online advertisements allegedly focus on zinc oxide as an ingredient (i.e., one Instagram advertisement states the Products "are formulated with zinc oxide, a mineral that protects against the widest range of UVA and UVB rays" (*id.* at ¶25); one Instagram advertisement includes a tag stating "#zincoxide" (*id.*); and one YouTube advertisement states that the Products are "Mineral-Based" (*id.* at ¶26). Plaintiffs do not allege that they ever saw or relied on the advertisements on Instagram or YouTube. Nevertheless, all of the statements are true.

Plaintiff Amy Schneider is a citizen of California and purchased one Product ("EltaMD UV Daily Broad-Spectrum SPF 40 Transparent Zinc Oxide, Tinted") from Amazon.com in or around February 2020. Compl. ¶9. Plaintiff Erika Opgenorth is a citizen of New York and purchased one Product ("EltaMD UV Daily Broad-Spectrum SPF 40 Transparent Zinc Oxide") from Amazon.com in or around March 2021. *Id.* at ¶10. Both claim they were deceived into purchasing the Product based on two identical grounds: (1) "the words 'Zinc Oxide' on the front label"; and (2) the phrase "Mineral-Based" on the Amazon.com product title. *Id.* at ¶¶9-10. Both claim they would not have made their purchase, or would have paid significantly less, if they knew the Product contained chemical active ingredients. *Id.*

Plaintiffs contend that Colgate's marketing is false and deceptive because the Products (which include Products Plaintiffs did not buy) contain chemical sunscreen ingredients in addition to the mineral zinc oxide, in some instances at higher levels than zinc oxide. *Id.* at ¶¶21, 28. In support of their claim that Colgate's marketing is deceptive, Plaintiffs pasted in the Complaint

fewer than 40 hand-picked reviews on Amazon.com for a Product that at the time Plaintiffs captured the image had more than 14,000 ratings and 4.7 out of 5 stars. *Id.* at ¶29. Plaintiffs allege that consumers are willing to pay a premium for the Products because they believe that they contain only zinc oxide, which they claim is "promised on the front label"—although the front label contains no qualifier that the "only" or "sole" active ingredient is zinc oxide. *Id.* at ¶35. Plaintiffs contend that consumers would have paid significantly less for the Products, or would not have purchased them at all, if they knew they were not made solely with zinc oxide. *Id.* at ¶¶34-35. They allege summarily and without scientific or medical support that chemical sunscreen ingredients are associated with negative health and environmental consequences. *Id.* at ¶¶30-33. However, the FDA specifically authorizes each of the mineral and chemical sunscreen ingredients used in EltaMD. *See* 21 CFR § 352.10 (listing permitted active chemical and mineral sunscreen ingredients, including zinc oxide, titanium dioxide, octinoxate, octisalate, and octocrylene).

Based solely on the three marketing points listed above and cherry-picked consumer reviews, Plaintiffs assert claims on behalf of themselves and four putative classes: a Nationwide Class, a California Class, a California Consumer Subclass, and a New York Class. Compl. ¶37. They assert eight causes of action: (1) violation of New York's General Business Law ("GBL") § 349 (on behalf of the New York Class); (2) violation of GBL § 350 (on behalf of the New York Class); (3) violation of California's Consumers Legal Remedies Act ("CLRA") (on behalf of the California Consumer Subclass); (4) violation of California's False Advertising Law ("FAL") (on behalf of the California Class); (5) violation of California's Unfair Competition Law ("UCL") (on behalf of the California Class); (6) breach of express warranty (on behalf of the California Class and the New York Class); (7) breach of implied warranty (on behalf of the California Class); and (8) quasi-contract/unjust enrichment/restitution (on behalf of the Nationwide Class or,

alternatively, the California and New York Classes).

For the reasons set forth below, the Court should dismiss the Complaint in its entirety, pursuant to Rules 12(b)(6), 12(b)(1) and/or 9(b).

## LEGAL ARGUMENT

### I.   Legal Standard

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Forjone v. New York (NYS) DMV*, 414 F. Supp. 3d 292, 298 (N.D.N.Y. 2019) (quoting *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012)). To state a claim, a plaintiff must furnish "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court emphasized that a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

To establish standing under Rule 12(b)(1), "a plaintiff must show that (1) he has suffered a concrete and particularized 'injury in fact' that is actual or imminent, rather than merely conjectural, (2) the injury is 'fairly traceable to the challenged action of the defendant,' and (3) the injury is 'likely to be redressed by a favorable decision.'" *Wang v. Bethlehem Cent. Sch. Dist.*, 2022 U.S. Dist. LEXIS 140153, at *11 (N.D.N.Y. Aug. 8, 2022) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)). The plaintiff bears the burden of establishing standing "with the manner and degree of evidence required at the successive stages of the litigation." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

Rule 9(b) requires that a plaintiff alleging fraud "must state with particularity the

8

circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this heightened standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F. 3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)).

## II.  Plaintiffs' Statutory Claims (Counts 1-5) Fail Because the Labeling and Advertisement for the Products are Factually True and Colgate Did Not Engage in Deceptive Conduct

To withstand dismissal, Plaintiffs' statutory consumer protection claims in Counts 1-5 (the "Statutory Claims") must plead facts demonstrating that Defendants engaged in deceptive, misleading, false, or unfair practices in marketing and selling their Products. *See* Cal. Bus. & Prof. Code §§ 17200, 17500; Cal. Civ. Code § 1770; N.Y. GBL §§ 349, 350. Such conduct must be capable of deceiving the reasonable consumer, not merely the "unwary consumer" or "least sophisticated consumer." *Hill v. Roll International Corp.*, 195 Cal. App. 4th 1295, 1304 (2011). As such, "[t]o prevail on their consumer fraud claims under New York and California law, Plaintiffs must establish that [the] allegedly deceptive advertisements were likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *see also Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) ("reasonable consumer" standard applies to UCL, FAL, and CLRA claims). To that end, Plaintiffs must demonstrate that it is "probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003); *see also Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d. Cir. 2007) ("[T]he alleged act must be likely to mislead a reasonable consumer acting reasonably under the circumstances." (internal quotations omitted)). This requires

9

"more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie*, 105 Cal. App. 4th at 508. Additionally, pursuant to California law, Plaintiffs are required to plead the California Statutory Claims (Counts 3-5) with specificity under Rule 9(b), including an allegation that Colgate knew or should have known about the misrepresentations or omissions. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (holding that Rule 9(b) applies to CLRA and UCL claims); *In re Arris Cable Modem Consumer Litig.*, 2018 U.S. Dist. LEXIS 1817, at *29 (N.D. Cal. Jan. 4, 2018) (Rule 9(b) applies to UCL, FAL, and CLRA claims).

### A. The Statutory Claims Fail Because the Statements were Factually True and Would Not Deceive the Reasonable Consumer

The Statutory Claims require Plaintiffs to allege that Colgate engaged in "deceptive acts or practices" or "[f]alse advertising" in marketing and selling its Products to consumers and plead facts accordingly. *See* N.Y. GBL §§ 349, 350; Cal. Civ. Code § 1750, Cal. Bus. & Prof. Code §§ 17200, 17500. Because Plaintiffs are unable to plead facts showing that a reasonable consumer would have been deceived by the labeling and advertising of the Products, and the labeling and advertising for the Products are factually true, Plaintiffs cannot succeed on their Statutory Claims.

### i. New York's GBL §§ 349, 350

Section 349 of the GBL prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." GBL § 349(a). In order to successfully assert a claim under GBL section 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. 2012). Moreover, to establish a claim under GBL section 350, which prohibits false advertising, "a plaintiff must demonstrate that the

10

advertisement (1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury." *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 287 (E.D.N.Y. 2009). Under both GBL sections 349 and 350, "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741. In determining whether a label is deceptive, "[c]ourts view each allegedly misleading statement…as a whole." *Wurtzburger v. Ky. Fried Chicken*, 2017 U.S. Dist. LEXIS 205881, at *6 (S.D.N.Y. Dec. 13, 2017) (quotations omitted). Consequently, this is an objective inquiry that may be resolved as a matter of law on a motion to dismiss. *See Fink*, 714 F.3d at 741; *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995).

### ii. California's CLRA, FAL, and UCL

The purpose of the CLRA is "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760. To that end the CLRA prohibits "unfair or deceptive acts or practices…undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any customer." Cal. Civ. Code § 1770(a). Similarly, Section 17500 of the FAL makes it unlawful for Colgate to make "any statement… which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading" and the California UCL provides that "unfair competition . . . include[s] any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code §§ 17500, 17200. As with New York, this is an objective inquiry which may be resolved as a matter of law on a motion to dismiss. *See Fink*, 714 F.3d at

11

741; *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995).

### iii.  The Labeling and Advertisements for the Products are Factually True and No Reasonable Consumer Would Be Deceived

Plaintiffs allege that by labeling and advertising the Products as containing zinc oxide and/or being "Mineral-Based," Colgate engaged in deceptive acts or practices and/or false advertising in marketing and selling their Products to consumers. *See* Compl. ¶¶51, 58, 70, 77, 82. In support, Plaintiffs assert that the statements are "misleading in a material way" as they "misrepresent the Products' active ingredients" such that the Products "did not contain the ingredients that were promised." *Id.* at ¶¶51, 58, 59, 67, 68, 77, 78, 83, 84. Plaintiffs further assert that such alleged misrepresentations induced the Plaintiffs to "purchase and pay a premium for the Products and to consume the Products when they otherwise would not have." *Id.* at ¶51. These allegations do not plausibly allege a statutory violation. The statements that the Products use zinc oxide and/or are mineral-based are true and correct, and thus are not deceptive, and Plaintiffs offer no allegations to the contrary.[2] The Products do in fact contain zinc oxide and/or are mineral based. Listing zinc oxide on the label and/or using the phrase "Mineral-Based" in advertisements alleges, at most, an acknowledgment that the Products contain zinc oxide and/or are mineral based, not that they are entirely zinc oxide or contain only mineral ingredients. Adding Plaintiffs' subjective gloss to labels that are plain on their face does not constitute a plausible allegation of fraudulent or deceptive advertising. Such statements are not misleading because they do not imply exclusivity. *See Cosgrove v. Or. Chai, Inc.*, 520 F. Supp. 3d 562, 584 (S.D.N.Y. 2021) (holding that despite using the term "vanilla" on the label, "there is nothing in the packaging to suggest that

---

[2] Although some courts have ruled differently on the use of the phrase "mineral-based," the reasoning in those non-binding decisions is not persuasive and does not support Plaintiffs' claims here.

the vanilla is sourced exclusively or predominantly to vanilla beans or vanilla extract"); *Varela v. Walmart, Inc.*, 2021 U.S. Dist. LEXIS 102661, at *15 (C.D. Cal. May 25, 2021) (dismissing the complaint, because, among other things "Plaintiff has not plausibly alleged that the 'Vitamin E Skin Oil . . . with Keratin' label — despite being literally true — is misleading because a reasonable consumer would read it and invariably conclude that 'the primary or exclusive oil in the Product is Vitamin E oil.'"). Plaintiffs fail to point to a single statement on the Products' label that is factually inaccurate.

Similarly, because the labels and advertisements do not state or suggest that the Products use *solely* zinc oxide, or *exclusively* minerals, Plaintiffs have failed to allege that a reasonable consumer could be deceived by the Products' labeling and advertising. There is nothing in the labeling or advertising to suggest that the Products contain "only zinc oxide as the active ingredient" as Plaintiffs assert. *See* Compl. ¶30. To the contrary, a reasonable consumer can easily read the labeling on the Products and determine that the Products do not exclusively contain mineral ingredients. *See Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015), *appeal dismissed* (Mar. 14, 2016) (finding that "any potential ambiguity" could "be resolved by the back panel of the products, which lists all ingredients in order of predominance, as required by the FDA"); *see also* Smith Decl., Ex. A at p. 5 ("Find the Best Sunscreen For You" chart available on Amazon, which allows a consumer to compare various EltaMD sunscreens based on various criteria, including the active ingredients).

Because Plaintiffs have failed to allege a specific misrepresentation found on the Products' labels that is deceptive or otherwise actionable, and the Products' labeling and advertising stating "Transparent Zinc Oxide" and/or "Mineral-Based," are factually true, no reasonable consumer could be deceived, and the Statutory Claims must be dismissed.

**III.    Plaintiffs Plead Only Conclusory Allegations Regarding Knowledge Under California Law**

Additionally, pursuant to Rule 9(b) of the Federal Rules of Civil Procedure and California law, Plaintiffs are required to plead the statutory claims with specificity, including an allegation that Colgate knew or should have known about the misrepresentations or omissions. *See Kearns*, 567 F.3d at 1125 (holding that Rule 9(b) applies to CLRA and UCL claims). Rule 9(b) requires that the alleged actions or omissions amounting to the alleged fraud "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Bly-Magee*, 236 F.3d at 1019 (quoting *Neubronner*, 6 F.3d at 671). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted).

Plaintiffs have not pled sufficient facts to show that Colgate knew information it allegedly failed to disclose at the time Plaintiffs purchased the Products. Instead, Plaintiffs simply reprint a handful of Amazon.com reviews. Compl. ¶34. But Plaintiffs fail to plead any specific, plausible facts establishing that Colgate had knowledge of these reviews—or any other issues regarding the Products' labeling or advertising. *See, e.g.*, *Resnick v. Hyundai Motor Am., Inc.*, 2017 WL 1531192, at *15 (C.D. Cal. Apr. 13, 2017) (finding plaintiffs did not adequately allege knowledge when they failed to plead facts indicating defendant was aware of particular complaints or monitored particular websites). Plaintiffs' reliance on the Amazon.com reviews is particularly implausible because they identify fewer than 40 reviews on a product that had, at the time, over 14,000 reviews—the *vast* majority of which were positive. *See* Smith Decl., Ex A.

It is not reasonable to infer that Colgate would have knowledge of 40 or so consumer reviews mentioning the Products' marketing on a third-party website. *See Morales v. Kimberly-*

14

*Clark Corp.*, 2020 U.S. Dist. LEXIS 93307, at *17 (S.D.N.Y. May 27, 2020) (finding that online consumer complaints do not "support an inference that it knew of and/or failed to disclose material information about its product"); *Snyder v. Tamko Bldg. Prods.*, 2019 U.S. Dist. LEXIS 169378, at *31-32 (E.D. Cal. Sep. 30, 2019) (finding allegations of knowledge based on warranty claim submissions and online consumer complaints are "the type of conclusory allegations that are not sufficient to support the conclusion that Defendant obtained actual knowledge of the specific defect, nor do they come close to establishing that Defendant knew of the defect *prior to* Plaintiff's purchase" to satisfy Rule 9(b)'s requirements for claims under the UCL, FAL, and CLRA). Here, Plaintiffs' conclusory allegations regarding Colgate's knowledge fail to support Counts 3, 4, and 5, which should be dismissed. *See Dreifort v. DJO Glob. Inc.*, 2019 U.S. Dist. LEXIS 187532, at *22-24 (S.D. Cal. Oct. 28, 2019) (granting dismissal where California statutory claims were pled in "a conclusory manner").

**IV.    Plaintiffs' Breach of Express Warranty Claim (Count 6) Must Be Dismissed for Failure to Identify the Terms and Conditions of Any Express Warranty on Which They Relied**

To establish a claim for breach of express warranty, Plaintiffs must establish the terms and conditions of the express warranty. Specifically, to plead an action for breach of express warranty under California law, a plaintiff must allege: "(1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach of warranty which proximately caused plaintiff's injury." *Tietsworth v. Sears, Roebuck & Co.*, 2009 U.S. Dist. LEXIS 40872, at *6 (N.D. Cal. May 14, 2009) (citing *Williams v. Beechnut Nutrition Corp.,* 185 Cal. App.3d 135, 142, 229 Cal. Rptr. 605 (1986)). Similarly, to adequately state a claim for breach of an express warranty under New York law, Plaintiffs must plead "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3)

15

breach of the warranty, and (4) injury to the buyer caused by the breach." *Bynum v. Family Dollar Stores, Inc.*, 592 F. Supp. 3d 304, 314 (S.D.N.Y. 2022) (citing *CBS Inc. v. Ziff-Davis Pub. Co.*, 75 N.Y.2d 496, 502-04, 553 N.E.2d 997, 1001, 554 N.Y.S.2d 449 (N.Y. 1990)).

Plaintiffs have failed to identify an express warranty, let alone the terms and conditions of any such warranty. Plaintiffs' allegation that the Products' labeling and advertisement as "Transparent Zinc Oxide" and/or "Mineral-Based" establishes a warranty between the Plaintiffs and Colgate that the Products are exclusively zinc oxide and/or mineral based is an implausible leap. *See* Compl. ¶89. Labeling and advertising the Products as "Transparent Zinc Oxide" and/or "Mineral-Based" does not create an actionable warranty between Colgate and Plaintiffs, as these statements facially contain no terms or conditions upon which Plaintiffs can rely. Because no warranty exists, Plaintiffs are unable to point to any specific violation of Colgate's obligations to Plaintiffs. Consequently, Plaintiffs have not, and cannot define the exact terms and conditions of any warranty made by Colgate.[3]

Further, under both New York and California law, a warranty claim must be assessed under a reasonable consumer standard. *See, e.g.*, *Azoulai v. BMW of N. Am. LLC*, 2017 U.S. Dist. LEXIS 57121, at *23 (N.D. Cal. Apr. 13, 2017) (explaining that breach of express warranty claims "may be dismissed as a matter of law where an alleged statement … 'in the context, is such that no reasonable consumer could be misled' in the manner claimed by the plaintiff"); *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 802 (S.D.N.Y. 2021) (holding that "[c]omplaint fails to plausibly allege that the product's label would be likely to deceive or mislead a reasonable consumer" where front label stated "Vanilla Soymilk" and plaintiff alleged the label

---

[3] Rather, at most, the phrases "Transparent Zinc Oxide" and/or "Mineral-Based" indicate that the Products contain zinc oxide and include mineral ingredients in their base, which is factually true.

16

misrepresented "the source of the product's vanilla flavor as being derived exclusively or predominately from the vanilla plant"); *see supra*, § I(A). As such, Count 6 should be dismissed.

## V.   Plaintiffs Cannot Assert Claims Based on Advertisements They Never Viewed

In addition to the reasons set forth above, Plaintiffs' claims based on state consumer protection statutes and breach of express warranty fail to the extent they are based on advertisements identified in the Complaint that Plaintiffs do not allege they ever saw. *See Gustavson v. Wrigley Sales Co.*, 2014 WL 60197, at *9 (N.D. Cal. Jan. 7, 2014) (plaintiff lacked standing to assert claims "based on statements appearing on a Wrigley website that [plaintiff] does not claim to have viewed"); *Gale v. IBM*, 9 A.D.3d 446, 447 (2d Dept. 2004) (dismissing claims under GBL §§ 349 and 350 for failure to plead causation because plaintiff did not allege "that he saw any of [the challenged] statements before he purchased or came into possession of his hard drive"). Plaintiffs must have viewed an advertisement to plausibly allege that they were misled by it or that it formed the basis of their bargain. *See Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp. 2d 70, 92-93 (N.D.N.Y. 2000) (deciding that plaintiff cannot state a claim for breach of express warranty without evidence that plaintiff read it or relied on it).

In particular, Plaintiffs do not allege that they viewed the advertisements on Instagram or YouTube that used the phrase "mineral-based." *See* Compl. ¶¶25-26. As such, to the extent claims are premised on those advertisements, Plaintiffs fail to plead that they relied on them or that they caused them any injury.[4]

---

[4] Similarly, a significant number of consumers purchased the Products based on their dermatologist's recommendation and/or directly from their dermatologist's office. These consumers (and putative class members) relied on their medical provider, not Defendants' marketing, so they do not have a claim based on the alleged misrepresentations identified in the Complaint. Parsing out consumers who purchased after viewing alleged misrepresentations made on social media, for example, versus consumers who relied on their dermatologist's recommendation, raises predominating individual issues that will prohibit certifying this case as a

**VI.    Plaintiff Schneider Fails to Plausibly Allege a Breach of Implied Warranty Under Cal. Com. Code § 2314 (Count 7), and the Claim Also Fails for Lack of Privity**

Plaintiff Schneider asserts a claim for breach of implied warranty on behalf of the California Class under Cal. Com. Code § 2314. *See* Compl. ¶¶95-102. The statute provides that "[u]nless excluded or modified [], a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1). For goods to be merchantable, they must "conform to the promises or affirmations of fact *made on the container or label* if any." Cal. Com. Code § 2314(2)(f) (emphasis added). Accordingly, to state a claim, Plaintiff must plausibly allege that the Products did not conform to any promises or affirmations of fact made on their labels. *Id.*; *see also* Compl. ¶¶98, 100 (alleging that "the Products have not 'conformed to the promises . . . made on the container or label' because the Products contain significant levels of chemical sunscreen ingredients"). But no labeling or marketing promised that the Products were "chemical free" or exclusively mineral; the only alleged "promise" on the label is the bare phrase, "Transparent Zinc Oxide," which is, at most, a representation that the respective Product contains "Transparent Zinc Oxide." *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1093 (N.D. Cal. 2017) ("The statement 'MADE WITH Real Fruit' does not reference the presence, or lack thereof, of trans fat. In fact, the product packaging for the Nutri-Grain bars does not mention trans fat at all. Defendant's factually true statement would not cause a reasonable consumer to believe that the Nutri-Grain Bars are free of trans fat."). As discussed previously, this phrase cannot sustain Plaintiffs' claims. This representation is factually true, and Plaintiffs do not dispute that the Products do, in fact, contain "Transparent Zinc Oxide." The only other phrase alleged in the Complaint, "Mineral-Based," does

class action. Although not a basis for Defendants' instant Motion to Dismiss, Defendants anticipate that these individual issues—among others—will preclude class certification.

18

not appear on the Products' labels and, in any event, is factually true. The Products' labels promise nothing more.

This claim is subject to dismissal for the additional reason that the California Plaintiff fails to plead privity. "Under California Commercial Code section 2314, . . . a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008). An exception applies for some breach of *express* warranty claims, but that exception does not extend to breach of implied warranty claims. *See In re Welspun Litig.,* 2019 U.S. Dist. LEXIS 84635, at *37 (S.D.N.Y. May 20, 2019) (noting that the California Supreme Court expressly limited the exception to the privity requirement to breach of express warranty claims) (citing *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 696 (1954)); *see also Hilsley v. Ocean Spray Cranberries, Inc.*, 2018 U.S. Dist. LEXIS 202679, at *32-33 (S.D. Cal. Nov. 29, 2018) ("An exception to the privity requirement exists but only as to breach of express warranty, and not breach of implied warranty."). Here, Plaintiff Schneider purchased from an online retailer, Amazon.com, and the Complaint is devoid of any attempt to allege privity with Colgate. *See Patterson v. RW Direct, Inc.*, 2018 U.S. Dist. LEXIS 198887, at *6 (N.D. Cal. Nov. 21, 2018) (granting motion to dismiss implied warranty claim brought under section 2314 of the California Commercial Code because plaintiff purchased product from Amazon, "and was thus not in vertical privity with the defendants"). Accordingly, the California Plaintiff's breach of implied warranty claim should be dismissed.

## VII. Plaintiffs' Claim for Quasi Contract/Unjust Enrichment/Restitution Cannot Survive under New York and California Law, and Plaintiffs Do Not Have Standing to Assert the Claim on a Nationwide Basis

Plaintiffs also fail to state a claim for "Quasi Contract/Unjust Enrichment/Restitution." Plaintiffs assert this claim on behalf of the putative Nationwide Class, in the first instance. *See*

19

Compl. ¶104. But variations among the laws of each state make a claim on behalf of a putative nationwide class untenable. As set forth below, the differences in state law are readily apparent in California and New York alone. In the alternative, Plaintiffs bring this claim on behalf of the members of the proposed California Class and New York Class, but those claims each fail as a matter of state law. *Id.* As a result, even if Plaintiffs could state a claim under the laws of California or New York—which they cannot—they could not maintain their putative nationwide class claim.

In California, unjust enrichment and restitution are not recognized as standalone causes of action. *See, e.g.*, *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132-33 (N.D. Cal. 2020) ("California does not recognize a separate cause of action for unjust enrichment.") (collecting California and federal cases); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) (holding that unjust enrichment and restitution are synonymous and there is no standalone cause of action for either); *Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, 1070 (N.D. Cal. 2021) (dismissing unjust enrichment claim because it is not a separate cause of action). Here, Plaintiffs' allegations in support of this claim are based on the same allegedly misleading marketing upon which their Statutory Claims are based. *See* Compl. ¶¶103-05. As such, this claim is also subject to Rule 9(b)'s heightened pleading requirements. *See In re Arris Cable Modem Consumer Litig.*, 2018 U.S. Dist. LEXIS 1817, at *29 (N.D. Cal. Jan. 4, 2018) (collecting cases). Thus, for the same reasons the Statutory Claims fail, Plaintiffs' purported quasi-contract claim also fails under California law. Count 8 must be dismissed as to Plaintiff Schneider and the putative California class.

In New York, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y. Inc.*, 18 N.Y.3d 777, 790 (N.Y. 2012) (collecting cases and holding "unjust enrichment is not a catchall cause of action to be used when others fail. It is available only in unusual situations when, though the defendant has

20

not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."). Here, Plaintiffs' claim for Quasi Contract/Unjust Enrichment/Restitution is a repackaging of their statutory and warranty claims. *See* Compl. ¶105. New York Plaintiff Opgenorth has already asserted statutory and contractual warranty claims in Count 1 (NY GBL §349); Count 2 (NY GBL §350); and Count 6 (Express Warranty). Thus, Count 8 must be dismissed as to Plaintiff Opgenorth and the putative New York class.

Moreover, Plaintiffs' claim fails under New York and California law for two additional reasons. First, Plaintiffs fail to allege that they lack an adequate remedy at law.[5] Second, they fail to plausibly allege that they were denied the benefit of their bargain because all of Colgate's representations were actually true.[6] Thus, there are various reasons to dismiss Count 8.

The Court should also reject Plaintiffs' attempts to assert a claim for unjust enrichment on behalf of a putative nationwide class under Count 8 because Plaintiffs lack standing to bring claims on behalf of the putative Nationwide Class. "Any party seeking to invoke the jurisdiction of a

---

[5] *Claims v. Avanir Pharm., Inc.*, 2022 U.S. Dist. LEXIS 213975, at *19 (C.D. Cal. Oct. 20, 2022) (finding "that an adequate remedy exists in the form of monetary damages and that Plaintiff's claim for unjust enrichment must be dismissed with prejudice"); *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 433 (S.D.N.Y. 2017) ("[A]ll of the New York Plaintiffs' unjust enrichment claims fail for a separate reason: Because they have adequate remedies at law.").

[6] Because Plaintiffs received what they intended to purchase—sunscreen containing the mineral zinc oxide—they received the benefit of their bargain and cannot state a claim for unjust enrichment. *See BNP Paribas Mortg. Corp. v. Bank of America, N.A.*, 949 F. Supp. 2d 486, 514 (S.D.N.Y. 2013) (dismissing unjust enrichment claim where "Plaintiffs still received 'the benefit of [their] bargain' and have not pled any facts showing the BoA was 'enriched' at Plaintiffs' expense" (citation omitted); *Chuang v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 4286577 at *8 (C.D. Cal. Sept. 20, 2017) (dismissing unjust enrichment claim because "[t]he statements regarding the fruit content and nutritional content of the fruit snacks are all true, so [p]laintiff has received the benefit of the bargain"); *Shin v. Campbell Soup Co.*, 2017 WL 3534991, at *8 (C.D. Cal. Aug. 9, 2017) (dismissing unjust enrichment because "[p]laintiff fails to allege that any statements on any [p]roduct packaging were untrue").

21

federal court to decide a case or controversy as contemplated in Article III of the Constitution must demonstrate standing." *Wang,* 2022 U.S. Dist. LEXIS 140153, at *11 (citing *Hollingsworth*, 570 U.S. at 704). "'[S]tanding is not dispensed in gross, and, accordingly, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.'" *Id.* (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)). "If a complaint includes multiple claims, at least one named class representative must have Article III standing to raise each claim." *Los Gatos Mercantile, Inc. v. E.I. Dupont de Nemours & Co.*, 2014 U.S. Dist. LEXIS 133540, at *14 (N.D. Cal. Sep. 22, 2014) (internal quotation marks and citation omitted). "That a suit may be a class action adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotation marks and citation omitted). The question of standing is appropriately addressed at the pleading stage. *See, e.g.*, *In re Direxion ETF Tr.*, 279 F.R.D. 221, 230 (S.D.N.Y. 2012) ("[A] court must address the 'threshold question' of Article III standing before it ever reaches the question of class certification."); *Parks v. Dick's Sporting Goods, Inc.*, 2006 U.S. Dist. LEXIS 39763, at *8 (W.D.N.Y. June 15, 2006) (rejecting argument that standing should not be considered until class certification stage); *Schertzer v. Bank of Am., N.A.*, 445 F. Supp. 3d 1058, 1072, 1072 n.3 (S.D. Cal. 2020) (providing examples and finding that there is a "growing trend" among California district courts to address standing at the pleadings stage and dismiss claims "under the laws of states in which no plaintiff resides or has purchased products").

Here, Plaintiffs' claim on behalf of the putative Nationwide Class is subject to dismissal under Rule 12(b)(1) because Plaintiffs have standing to bring a common law claim only in the

states in which they reside or purchased the Products[7]—California for Plaintiff Schneider and New York for Plaintiff Opgenorth. *See In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1095 (S.D. Cal. 2017) ("The overwhelming majority of courts have held that Article III standing for state law claims is necessarily lacking when no plaintiff is alleged to have purchased a product within the relevant state."); *Corcoran v. CVS Health Corp.*, 2016 U.S. Dist. LEXIS 99797, at *7-8 (N.D. Cal. July 29, 2016) (collecting cases). Plaintiffs cannot represent unnamed plaintiffs from states other than New York and California; therefore, they cannot maintain a claim for Quasi Contract/Unjust Enrichment/Restitution on a nationwide basis. *See Stewart v. Kodiak Cakes*, LLC, 537 F. Supp. 3d 1103, 1124 (S.D. Cal. 2021) (finding plaintiffs lack standing to bring claim for quasi-contract/unjust enrichment "under the laws of the states where they do not reside or did not purchase the at-issue products"); *In re HSBC BANK USA, N.A.*, 1 F. Supp. 3d 34, 49 (E.D.N.Y. 2014) (finding that "Plaintiffs may only assert a state claim if a named plaintiff resides in, does business in, or has some other connection to that state"). Thus, Plaintiffs' claim on behalf of the Nationwide Class should be dismissed under Rule 12(b)(1).[8] As such, all variations of Count

---

[7] *See In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 146 (S.D.N.Y. 2008) ("In analyzing putative, nationwide, consumer-protection class actions, several courts have determined that the law of the state where each plaintiff resides and purchased the relevant products should apply.").

[8] In the alternative but along the same lines, the Court can strike the Nationwide Class claim. Under Rule 12(f), the Court may strike from a pleading any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 23(c)(1) directs district courts to determine "as soon as practicable" whether the proposed class satisfies the class certification requirements, and Rule 23(d)(1)(D) authorizes the Court to "require that the pleadings be amended to eliminate allegations about representation of absent persons." Fed. R. Civ. P. 23(c)(1), 23(d)(1)(D); *Davito v. Amtrust Bank*, 743 F.Supp.2d 114, 115 (E.D.N.Y. 2010) (granting motion to strike class allegations); *Tietsworth v. Sears*, 720 F.Supp.2d 1123, 1146 (N.D. Cal. 2010) (holding that "this Court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained"). Here, Plaintiffs cannot represent consumers on claims that they themselves do not have standing to assert, and as the nuances in California and New York alone demonstrate, the Nationwide Class cannot meet the requirements of typicality or predominance, among other issues.

8 (whether on behalf of a putative Nationwide Class or on behalf of the putative California and New York Classes) fail as a matter of law.

## VIII.    Plaintiffs Fail to Adequately Plead a Price Premium Injury

All of Plaintiffs' claims under both New York and California law require Plaintiffs to adequately plead an injury resulting from allegedly misleading representations. "Under New York law, a plaintiff's allegation that he or she bought a product that he or she 'would not have purchased, absent a manufacturer's deceptive commercial practices' is insufficient to establish a cognizable injury under NYGBL §§ 349 and 350." *Zottola v. Eisai Inc.*, 564 F. Supp. 3d 302, 310 (S.D.N.Y. 2021); *Horti v. Nestlé HealthCare Nutrition, Inc.*, 2022 U.S. Dist. LEXIS 117773, at *22 (N.D. Cal. July 5, 2022) (a plaintiff must plead with some "particularity how they were injured").

Here, the only injury Plaintiffs assert is the payment of an alleged premium for the Products. *See, e.g.*, Compl. ¶¶5, 51, 52, 59, 93, 101. But Plaintiffs must allege sufficient plausible facts to support such a price premium theory of injury. *See Dacorta v. AM Retail Grp., Inc.*, 2018 U.S. Dist. LEXIS 10733, at *20 (S.D.N.Y. Jan. 23, 2018) (stating that "Plaintiff's apparent belief that simply alleging the word 'premium' will suffice, is simply incorrect" and holding that the plaintiff failed to plead any connection between the alleged misrepresentation and the value of the product); *Varela*, 2021 U.S. Dist. LEXIS 102661, at *6 n.7 (observing that plaintiff failed to allege facts establishing that she actually paid a premium price); *Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) ("Simply because Plaintiffs here recite the word 'premium' multiple times in their Complaint does not make Plaintiffs' injury any more cognizable."). Plaintiffs allege no non-speculative facts in the Complaint to establish that the Products commanded a premium based on the alleged misrepresentations, such that they suffered

24

a pecuniary injury by purchasing the Products. Without any plausible allegations showing that Plaintiffs were charged a premium stemming from the alleged misrepresentations, Plaintiffs cannot sustain their claims.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety.

Dated: January 26, 2023

Respectfully submitted,

GREENBERG TRAURIG, LLP

By:    /s/ Keith E. Smith
       Keith E. Smith (Bar Roll No. 700611)
       Nilda Isidro (Bar Roll No. 516273)
       One Vanderbilt Ave
       New York, New York 10017
       Telephone: 212.801.9200
       smithkei@gtlaw.com
       Nilda.Isidro@gtlaw.com

       *Attorneys for Defendants Colgate-Palmolive*
       *Company and CP Skin Health Group, Inc.*

25